UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GHALEB HATEM,

          Plaintiff,          CASE NO. 09-14649

v.

                                          HON. MARIANNE O. BATTANI

STATE FARM FIRE AND CASUALTY
COMPANY,

          Defendant.
_____/

**OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant State Farm's Motion for Summary Judgment. (Doc. 21). The Court heard oral argument on July 14, 2011. The parties filed timely supplemental briefs on the proof of damages issue the Court identified at the hearing. For the reasons that follow, Defendant's motion is **DENIED**.

**I.    STATEMENT OF FACTS**

Plaintiff Ghaleb Hatem owns a large, two-story, mixed-use building that is located at 7845 Schaefer Road in Dearborn, Michigan. Defendant State Farm insured the building against fire damage under a commercial insurance policy. (Doc. 21 Ex. L). The policy limit for fire damage is $784,700.00.

In mid-2007, after sitting vacant for nearly two years, Plaintiff decided to renovate the building for commercial use. He acted as the general contractor in the project, but did not submit a master-building plan to the City of Dearborn. (Doc. 23 at 4). Plaintiff hired several subcontractors to perform general demolition, electrical, and plumbing work. The subcontractors filed for building permits with the City. (Doc. 23 Ex. D). The

parties disagree on whether the City actually issued the permits. (Doc. 23 at 5; Doc. 21 Ex. E at 58, 60, 67-68). They also disagree on the scope and quality of the subcontractor's work. (Doc. 21 at 4; Doc. 23 at 6). While the renovations were on going, on September 19, 2007, Plaintiff secured a commercial tenant and signed a five-year lease that was to begin on January 1, 2008. (Doc. 23 Ex. F).

On December 1, 2007, a fire broke out in the building that caused severe fire, smoke, and water damage. At the time of the fire, Plaintiff's renovations were incomplete and the building did not comply with current building code. Plaintiff alleges to have spent more than $117,000 on renovations prior to the fire. (Doc. 23 Ex. B; Ex.C).

On December 6, 2007, upon Defendant's request, Jim Peldo of Balfour USA inspected the building to make an estimate of the cost to return the building to pre-fire condition, the agreed upon measure of loss. (Doc. 25 at 1). Peldo originally estimated that it would cost $288,315.96 to repair the building to pre-fire condition. (Doc. 23 Ex. H). Peldo's estimate included the cost of completing the renovations that Plaintiff started, but did not have the opportunity to finish. Peldo later raised his estimate to $336,596.27 after Plaintiff objected that the initial amount was insufficient to repair the building. (Id.)

In early March 2008, Dearborn City Inspector Bill Greenhalgh issued a report which recommended that the building be demolished, but also listed steps that would be required to repair the building to current code. (Doc. 23 Ex. I). At the time of his report, Greenhalgh had not determined whether the fire caused such structural damage as to render the building unrepairable. (Doc. 22 Ex. L at 84). Plaintiff claims that, regardless

of Greenhalgh's tentative conclusions, Andy Pizzino, Senior Section Supervisor of the City's Building and Safety Department, told Plaintiff that the City would still order demolition because the fire severely damaged the building's steel support beams. (Doc. 23 at 6).

Plaintiff hired Adnan Al-Saati of A&M Consultants to perform a structural evaluation of the building in March 2008. (Doc. 23 Ex. J). After a site inspection, Al-Saati concluded:

> The fire-damaged structures will have to be removed and replaced in its entirety in order to achieve the requirements for a safe structure. In the process of removing fire damaged unsafe structural members, it is our experience that the remaining structure will be damaged and the structural integrity of the building will be compromised. Accordingly, we recommend that the entire structure be removed and replaced with a structure that meets current codes.

(Id. at 1-2).

In May 2008, Plaintiff solicited estimates from Bassem Saleh of George H. Pastor & Sons General Contracting and Ali El-Zein of Starnet Construction Inc. on the cost to repair to the building and the cost to demolish and rebuild. Pastor estimated it would cost $867,500 to rebuild and $515,700 to repair. (Doc. 21 Ex. Q; Ex. R). El-Zein estimated it would cost $604,564 to rebuild and $534,685 to repair. (Id. Ex. O; Ex.P). Saleh and El-Zein wrote the estimates to return the building to a code-compliant, move-in ready condition. When pressed to give an estimate to rebuild to pre-fire condition, i.e., a building in the middle of extensive renovations and not in compliance with current building code, El-Zein testified his original estimate should be reduced by approximately $20,000. (Doc. 28 Ex. 2 at 64). Saleh could not estimate what it would cost to return the building to pre-fire condition. (Doc. 21 Ex. H at 71-77). Additionally, El-Zein

3

believed the latent structural damage would make demolition the only viable option. (Doc. 28 Ex. 2 at 48-49).

Plaintiff provided these estimates and Al-Saati's report to Defendant in support of his position that Peldo's estimate was too low.  He also claimed Al-Saati's report undermined Peldo's conclusion that the building was repairable.  Defendant disagreed and conditioned the issuance of policy proceeds on the acceptance of Peldo's estimate. Plaintiff rejected Defendant's offer and filed suit in state court on October 4, 2009.  (Doc. 1 Ex. 2).  Defendant timely removed to this Court.  (Doc. 1).

In June of 2010, the City of Dearborn ordered a hearing to show cause why the building should not be demolished since "extensive fire damage, exposure to the elements, and a complete lack of maintenance" had caused the building to become a safety hazard.  (Doc. 21 Ex. M).  Plaintiff, Defendant's counsel, and Greenhalgh testified at the hearing.  (Doc. 23 Ex. L).  The City ultimately concluded the fire caused "numerous structural deficiencies" and ordered demolition.

In September 2010, Defendant hired structural engineer Curt Egerer of Paragon Forensic to inspect Plaintiff's building and review Peldo's estimate.  (Doc. 21 Ex. T). Egerer concluded:

> The fire-related damage to this building is routine, repairable, and typical of fire damage to similar age/type buildings. There was nothing extraordinary about this particular fire or the damage it caused. Further, there are no conditions present to warrant any special structural testing or any further structural investigation of the building or its components prior to beginning the repair work itemized by [Peldo].

(Id. at 2).  Egerer also agreed with the scope of Peldo's repair estimate.  (Doc. 21 Ex. G at 7).

4

On May 3, 2011, after discovery was complete, Defendant filed a motion for summary judgment under Fed. R. Civ. P. 12(c) and/or 56. (Doc. 21). The Court heard oral argument on July 14, 2011. At the end of the hearing, the Court instructed the parties to file supplemental briefing on the issue of whether Plaintiff has sufficient proofs on how much it would cost to either rebuild or repair the building to pre-fire condition. The parties filed timely briefs; Defendant's motion is now before the Court.

## II.     STANDARD OF REVIEW

### A.  Fed. R. Civ. P. 12(c)

Federal Rule of Civil Procedure 12(c) allows a party to move for a judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). In reviewing such a motion, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007) (citation omitted). Accordingly, "[a] Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." Id. (quotation omitted).

### B.  Fed. R. Civ. P. 56

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the

existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)).  The non-moving party may not rest upon its mere allegations, but rather must set out specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v.DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

## III.    ANALYSIS

The parties dispute whether Plaintiff has sufficient damages proofs.  Defendant argues Plaintiff's experts do not opine on the cost to rebuild or repair the building to pre-fire condition - a building in the midst of substantial renovations and not code-complaint. Plaintiff argues Ali El-Zein testified a pre-fire condition building would be approximately $20,000 less than his estimate for a code-complaint, "move-in" ready building.  Plaintiff

6

also maintains there are genuine issues of material fact regarding the pre-fire condition of the building and whether the building is repairable.

The Court agrees with Plaintiff and finds three genuine issues of material fact for trial: (1) the state of the renovation work prior to the fire; (2) whether the building is repairable; and (3) the cost to return the building to pre-fire condition. Regarding the first issue, the circumstances surrounding the scope, progress, and quality of the renovation work will directly affect Plaintiff's damages as the parties agree the measure of loss is the cost to return the building to a "pre-fire" condition. The parties vigorously dispute the nature of the building's pre-fire condition and the record shows a fact question on this issue.

As for whether the building is repairable, Defendant's expert, Curt Egerer, says it is and Plaintiff's expert, Adnan Al-Saati, says it is not. Like above, resolution of this dispute will affect the quantum of Plaintiff's damages because the cost to demolish and rebuild is different from the cost to repair. On this issue, the parties have set up a "battle of the experts." "[C]ompeting expert opinions present the 'classic battle of the experts' and it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves." Phillips v. Cohen, 400 F.3d 388, 399 (6th Cir. 2005) (citation omitted); see also Conde v. Velsicol Chemical Corp., 804 F.Supp. 972, 984 (S.D. Ohio 1992) ("[W]hen the Court is confronted with a 'battle of the experts,' the jury must decide the victor."). Since the evaluation of expert opinion is properly left to the jury, and that evaluation controls the boundaries of Plaintiff's damages, it would be inappropriate for the Court to grant Defendant summary judgment.

Finally, although Plaintiff does not dispute that Bassem Saleh did not estimate the cost to return the building to a pre-fire condition, Ali El-Zein testified that such a cost is $20,000 less that his estimate to deliver a fully finished building.  (Doc. 28 Ex. 2 at 57-64).  Defendant objects to El-Zein's estimate as unreliable "sheer speculation and guesswork." (Doc. 29 at 3).  "An expert's opinion must be supported by more than subjective belief; it requires support by 'good grounds' based on what is known. McClean v. Ontario, Ltd., 224 F.3d 797, 800-01 (6th Cir. 2000) (citations omitted).  El-Zein had a reasonable factual basis for his estimate.  Having written two estimates to deliver Plaintiff a "move-in" ready, code-complaint building, El-Zein was sufficiently familiar with the specifics of Plaintiff's building to offer an opinion as to the cost to deliver a pre-fire condition building.  Moreover, El-Zein made the estimate during his deposition after reviewing the available information concerning the pre-fire condition of the building.  Defendant's critique of the factual basis of El-Zein's estimate simply persuades the Court that the jury should resolve this issue.  See Moross Ltd. Partnership v. Fleckenstein Capital, Inc., 466 F.3d 508, 516 (6th Cir. 2006) ("[M]ere weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." (citation omitted)).  Accordingly, summary judgment is improper.

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. 21) is **DENIED**.

**IT IS SO ORDERED.**

8

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

DATE: <u>August 17, 2011</u>

## CERTIFICATE OF SERVICE

    I hereby certify that on the above date a copy of this Order was served upon all Parties of record, electronically.

        s/Bernadette M. Thebolt
        Case Manager